**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANICE BALONEK and JANA BREADY, individually and on behalf of all similarly-situated persons, | ) ) ) | Case No. 14 C 1457 |
| | ) | |
| Plaintiffs, | ) | Judge James F. Holderman |
| | ) | Magistrate Judge Young B. Kim |
| v. | ) | |
| | ) | |
| SAFEWAY, INC. and DOMINICK'S FINER FOODS, INC of ILLINOIS. | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' AGREED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
<u>SETTLEMENT AND FOR CLASS CERTIFICATION</u>**

ATTORNEYS FOR PLAINTIFFS:

Robin Potter, Esq.
M. Nieves Bolanos, Esq.
Patrick Cowlin, Esq.
Robin Potter & Associates, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org

Martin Dolan, Esq.
Karen Munoz, Esq.
Dolan Law Offices, P.C.
10 South LaSalle Street, Suite 3702
Chicago, Illinois 60603
(312) 676-7600
mdolan@dolanlegal.com
kmunoz@dolanlegal.com

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 2

        a.      Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        b.      The Parties Thoroughly Investigated the Case . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        a.      The Proposed Settlement Class and Class Period . . . . . . . . . . . . . . . . . . . . . . 4

        b.      Payments to Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      Class Representative and Opt-In Plaintiff Enhancement Payments . . . . . .5

        c.      Settlement Administration and Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        d.      Attorneys' Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .8

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL
        AND CERTIFY THE SETTLEMENT CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        a.      Settlement and Class Action Approval Process . . . . . . . . . . . . . . . . . . . . . .. . 8

        b.      The Criteria for Preliminary Settlement Approval Are Satisfied. . . . . . . . . . . . 10

                1.      Strength of Plaintiffs' Case As Compared
                        to the Amount of the Settlement and Allocation
                        of the Settlement Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

                2.      Complexity, Length, and Expense of Further Litigation. . . . . . . . . . . . .12

                3.      There Is No Opposition To The Settlement. . . . . . . . . . . . . . . . . . . .. . . 13

                4.      Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

                5.      The Stage of the Proceedings and Discovery Completed . . . . . . . . . . . .14

                6.      The Settlement Was the Result of Arm's Length
                        Negotiations Without Any Hint of Collusion . . . . . . . . . . . . . . . . . . . . . .14

c.      Provisional Certification of the Settlement Class is Appropriate . . . . . . . . . . . .. 15

    1.      The Requirement of Numerosity is Met . . . . . . . . . . . . . . . . . . . . . . .. . 17

    2.      These Issues Meet the Commonality Requirements . . . . . . . . . . . . . . . 18

    3.      The Issues Meet the Typicality Requirements . . . . . . . . . . . . . . . . . . . .19

    4.      Adequacy of Representation is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . 19

    5.      Rule 23(b)(3) is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

d.      The Parties' Proposed Notice Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

e.      Scheduling Final Approval Hearings Is Appropriate . . . . . . . . . . . . . . . . . . . . . .22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Arango v. GC Services, LP, et al.,* No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124
(N.D. Ill. June 10, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819 (D. Mass. 1987) . . . . . . . . . . . . 15

*Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330 (N.D. Ill. 2009) . . . . . . . . . 16

*Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH,
2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004) . . . . .. . . . . . . . . . . . . . . . . . 6

*Black v. Settlepou, P.C.,* 732 F.3d 492 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 8, 10

*Cook v. McCarron,* No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090
(N.D. Ill. Jan. 22, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,
11

*Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752; 892 N.E.2d 78;
322 Ill. Dec. 831 (1st Dist. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 (7th Cir. 1983) . . . . . . . . . . . . . . . .20

*Doe v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466 (N.D. Ill. 1992). . . . . . . . . . . . . . . . 18

*EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884 (7th Cir. 1985). . . . . . . . . . . . . . . . . . .11

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .18, 20

*Gautreaux v. Pierce,* 690 F.2d 616 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,*
212 F.R.D. 400, 410 (E.D. Wis. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 13

*Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001). . . . . . . . . 13

*Haschak v. Fox & Hound*, No. 10 C 8023, 2012 U.S. Dist. LEXIS 162476

(N.D.Ill. Nov. 14, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB;
2012 U.S. Dist. LEXIS 165464 (S.D.Ind. 11/20/12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . 11

*Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130
(N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002 (N.D. Ill. 2000). . . . . . . . . 12-14

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Johns v. DeLeonardis,* 145 F.R.D. 480 (N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Ladegaard v. Hard Rock Concrete Cutters,* No. 00 C 5755,
2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677 (7th Cir. 1987) . . . . . 11

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . 21

*Morgan v. Family Dollar,* 551 F.3d 1233 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985) . . . . . . . . 10

*Perez v. Radioshack Corp.*, 552 F. Supp. 2d 731 (N.D. Ill. 2005). . . . . . . . . . . . . . . . . . . . . 19

*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 (1985). . . . . . . . . . . . . . . . . . . . . . . 24

*Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . 13

*Retired Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 20

*Riordan v. Smith Barney,* 113 F.R.D. 60, 65 (N.D. Ill 1986). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 15-16,
19

iv

*Schmidt v. Smith & Wollensky LLC,* 268 F.R.D. 323 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . . 16, 21

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill 1992). . . . . . . . . . . . . . . 23

*Swanson v. Am. Consumer Indus.,* 415 F.2d 1326 (7th Cir. 1966). . . . . . . . . . . . . . . . . . . 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006). . . . . . . . . . 10, 11

*Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010) . . . . . . . . . . . . . . 12, 20

*Villanueva v. Davis Bancorp, Inc.,* No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089 (N.D. Ill. July 8, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wal-Mart Stores, Inc., v. Dukes,* 131 S. Ct. 2541 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Walker v. Bankers Life & Cas. Co.,* 06 C 6906, 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. 10/1/07) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Williams-Green v. J. Alexander's Rests., Inc.,* No. 09 C 5707, 2011 U.S. Dist. LEXIS 99373 (N.D. Ill. September 1, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Winston v. Speybroeck,* No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131 (N.D. Ind. Aug. 2, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396 (N.D. Ill. Feb. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATUTES**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. . . . . . . . . . . . . . . . . . . . . . . . . 1

Illinois Minimum Wage Law ("IMWL"), 810 ILCS 105/1 et seq . . . . . . . . . . . . . . . . . . . . .1

**RULES**

Fed.R.Civ.P. Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *.passim*

v

**REGULATIONS**

29 C.F.R. 541.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**TREATISES**

2 Herbert B. Newberg & Alba Conte, Newberg on  Class Actions (3d ed. 1992) . . . . . . . . . .8, 9

Manual for Complex Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,15
                                                                                                                           23

## I.      INTRODUCTION

Named Plaintiffs Janice Balonek and Jana Bready (collectively, "Named Plaintiffs" or "Class Representatives") filed this action on behalf of themselves and all other persons similarly situated, alleging that Defendants Safeway, Inc. and Dominick's Finer Foods, LLC (hereinafter "Defendants" or "Dominick's") failed to pay employees one and one half times their regular hourly rate of pay for time they worked in excess of forty (40) hours in individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Illinois Minimum Wage Law ("IMWL"), 810 ILCS 105/1 et seq.

Named Plaintiffs worked for Defendants as salaried General Merchandise Managers (GMM's) and/or Assistant General Merchandise Managers (AGMM's). The "General Merchandise" department was one of several departments within each Dominick's store. It stocked non-grocery goods, such as cosmetics, beauty products, over the counter pharmaceuticals, health products and liquor. *Inter alia*, GMMs' and AGMMs' responsibilities entailed ensuring the general merchandise department was properly stocked and organized per company specifications. Defendants classified Named Plaintiffs and other salaried GMM's and AGMM's as exempt from the overtime requirements of the FLSA and IMWL and did not pay them overtime wages for the time they worked in excess of forty (40) hours a week. This Court preliminarily certified this matter as a class action for settlement purposes on August 13, 2014 (Dkt. 29).

After a mediation session with Magistrate Judge Young B. Kim, the Parties reached a compromise on the claims asserted in the Lawsuit. The Parties move this Court for an order preliminarily (1) approving the Parties' Stipulation of Settlement and proposed order

approving class certification, (2) approving the form and manner of class notice, (3) granting

certification of this matter as a class action, 4) scheduling a Fairness Hearing for final approval

of settlement, and (5) entering the order attached as Exhibit 1.  In further support of this Motion,

Plaintiffs state as follows:

## II.      STATEMENT OF THE FACTS

### a.      *Procedural Background*

On February 28, 2014, Named Plaintiffs Janice Balonek and Jana Bready filed this

Action in the United States District Court for the Northern District of Illinois, Eastern Division,

on behalf of themselves and others similarly situated, alleging that Defendants violated the

Illinois Minimum Wage Law ("IMWL") and federal Fair Labor Standards Act ("FLSA") by

classifying salaried Dominick's GMM's and AGMM's as "exempt" and by not paying them

overtime wages.  Dkt. 1.  On February 28, 2014, Named Plaintiffs filed a Motion for Class

Certification of their Illinois Minimum Wage Law Claim.  Dtk. 8. The Court entered and

continued that motion.  Dkts. 53 and 77.  On April 29, 2014, Plaintiffs filed their First Amended

Complaint.  Dkt. 18.

Defendants filed their Answer to the First Amended Complaint on May 13, 2014,

acknowledging that they classified Plaintiffs and other salaried GMM's and AGMM's as exempt

from the FLSA and IMWL and acknowledging that Defendants did not pay Plaintiffs and other

salaried GMM's and AGMM's overtime wages. Dkt. 23, ¶26.  Defendants denied that the

"exempt" classification was unlawful.  *Id*.

2

b.  *The Parties Thoroughly Investigated the Case*

In May 2014, the Parties discussed the prospect for early settlement discussions and alternative dispute resolution. Declaration of Robin Potter, ¶ 4, attached hereto as Exhibit 2. The Court's Order of May 8, 2014 referred the case to Magistrate Judge Kim for settlement conference and discovery supervision. Dkt. 77. Counsel for Plaintiffs requested that Dominick's produce payroll information to advance the parties' discussions on settlement. Declaration of Robin Potter, ¶ 4. On May 28, 2014, Defendants provided Plaintiffs' Counsel with payroll and job history data for persons who were employed as GMM's and AGMM's between February 2011 and January 25, 2014. *Id*.

Counsel for Plaintiffs reviewed that information and issued a class-wide written settlement demand and position statement on August 4, 2014, pursuant to Magistrate Judge Kim's Standing Order governing Settlement Conferences and his Order of June 12, 2014 (Dkt. 27). Declaration of Robin Potter, ¶ 5. On August 11, 2014, Defendants issued a counter-offer and position statement. *Id*. On August 13, 2014, the Court preliminarily granted Plaintiffs' Motion for Class Certification for purposes of settlement. Dkt. 29.

On August 21, 2014, the parties conducted a mediation settlement conference before Magistrate Judge Kim. Declaration of Robin Potter, ¶ 6. The Parties were unsuccessful in resolving the class-wide claims on that date. *Id*. At the conclusion of the conference, however, Magistrate Judge Kim issued a settlement recommendation that the case settle for a cash settlement of $1.7 million. *Id*. The following week the parties accepted the Magistrate Judge's recommendation, and thereby reached a preliminary agreement. *Id*. Described in further detail below, the Settlement provides for a payment to all Class Members who do not opt-out of the

3

Settlement. Ex. 2, Declaration of Robin Potter, ¶7. Class Members do not need to submit claim forms to participate in the Settlement. *Id.*

### III.    THE PROPOSED SETTLEMENT

The details of the Settlement are contained in the Joint Stipulation of Settlement and Agreement to Settle Class Action Claims ("Settlement Agreement"), a copy of which is attached as Attachment A to the Potter Declaration. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms.

a.    *The Proposed Settlement Class and Class Period*

The Parties ask that the Court certify a class composed of:

All persons who worked for Defendants in the State of Illinois in the job position General Merchandise Manager and/or Assistant General Merchandise Manager between February 28, 2011 and January 25, 2014 ("Class Period") and who were paid on a salary basis (herein the "Class" or "Settlement Class").

The Settlement Agreement identifies the individuals who are members of the Settlement Class. Ex. 2, Declaration of Robin Potter, ¶ 7; Attachment A (Stipulation of Settlement); Exhibit A to Settlement Agreement (Spreadsheet Listing Allocation of Damages and summary explanation of basis for distribution).

b.    *Payments to Class Members*

Each Class Member's *pro rata* settlement share will be calculated as set forth in Section 8 of the Settlement Agreement. Class Members' estimated payments are listed in Exhibit A of the Settlement Agreement. For purposes of calculating payments to Class Members from the Settlement Fund, as defined in Section IV.4 of the Settlement Agreement, the gross compensation paid to each Class Member and the dates of employment each Class Member

worked were determined from supplemental job history data Defendant produced to Plaintiffs' Counsel on May 28, 2014. Each Class Member will receive a Short Form Notice document that will identify the approximate amount they will be paid from the Settlement Fund[1].  Each Class Member will have an opportunity to object to or opt-out of the Settlement.

The Settlement Agreement provides that Class Members do not need to submit a claim form to receive monetary benefits from the Settlement Fund. Class Members who do not exclude themselves from the settlement will not need to take any affirmative action to receive their share of the Settlement Fund. Class Members will have one-hundred eighty (180) days after the mailing of the settlement checks to cash their checks. If a check remains uncashed within one-hundred-eighty (180) days after it is mailed, the amount of such Settlement payments will issued as a *cy pres* distribution to the Employee Rights Advocacy Institute for Law and Policy, 417 Montgomery Street, Fourth Floor, San Francisco, CA  94104.

### 1.    *Class Representative and Opt-In Plaintiff Enhancement Payments*

The Settlement Agreement also contemplates enhancement payments to the Class Representatives and other actively-participating opt-in plaintiffs, to acknowledge their service to the class.  Plaintiffs shall request Enhancement Payments of ten thousand dollars ($10,000.00) for Named Plaintiffs Janice Balonek and Jana Bready, as well as one thousand five hundred dollars ($1,500.00) for each plaintiff who filed a consent form and opted into this case[2].  Ex. 2,

---

[1]A copy of the proposed Short Form Notice is attached as Exhibit B to the Settlement Agreement.  A copy of the proposed Complete Notice is attached as Exhibit C to the Settlement Agreement.

[2]The opt-in Plaintiffs are: Sharon Briones, Linda Brzycki, Luis Cambroni, Kimberly Cirrintano, Beth Curran, Francesco Cusimano, Christine De Anda, Patricia Franklin, Chiara ("Clare")

5

Declaration of Robin Potter, ¶8. These payments are in addition to any payment that these individuals receive as their pro rata share of the Settlement Fund. *Id.*

In light of their efforts resulting in a $1,700,000.00 settlement on behalf of the Settlement Class, the Named Plaintiffs are entitled to the proposed modest enhancement payment. Ex. 2, Declaration of Robin Potter, ¶9. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Recent decisions in this Circuit have approved comparable or higher incentive awards. See, e.g., *Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB; 2012 U.S. Dist. LEXIS 165464 at *5 (S.D.Ind. 11/20/12); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78, ¶5) (awarding $10,000 incentive award in Illinois Minimum Wage Law case).

In this case, the Named Plaintiffs were responsible for initiating and maintaining this action. They participated in the case, provided documents and information regarding the merits of the claims, helped Plaintiffs' counsel prepare the settlement demand and damages model,

---

Galloro, Linda Hardesty, Mary Horosimski, Robert Koch, Jr., Nicole Krivanek, Serene Manis, Sharon Maxa, Dennis McNamara, Karen Nofsinger, Lilia Plata, Hope Ruebensam, Kay Sharp, Greg Szymanski, and David Vileta.

attended the mediation, and performed everything that was asked of them. Ex. 2, Declaration of Robin Potter, ¶9. The plaintiffs who filed consent forms to join this lawsuit – Sharon Briones, Linda Brzycki, Luis Cambroni, Kimberly Cirrintano, Beth Curran, Francesco Cusimano, Christine De Anda,, Patricia Franklin, Chiara ("Clare") Galloro, Linda Hardesty, Mary Horosimski, Robert Koch, Jr., Nicole Krivanek, Serene Manis, Sharon Maxa, Dennis McNamara, Karen Nofsinger, Lilia Plata, Hope Ruebensam, Kay Sharp, Greg Szymanski, and David Vileta – also provided a material service to the class. They provided valuable documents and information to Plaintiffs' Counsel that assisted the Named Plaintiffs in recovering wages on behalf of all Class Members. Ex. 2, Potter Decl., ¶ 10. Without the efforts of the Named Plaintiffs and the Consent Plaintiffs, this case would not have been filed and this settlement would not have been achieved. Ex. 2, Potter Decl., ¶ 10. As a result of these efforts and the result achieved, the incentive payments to these individuals are well justified.

      c.    *Settlement Administration and Notice*

The Parties have agreed that Plaintiffs' counsel will perform the duties of Settlement Administrator, with the assistance of Defendants. These duties are set forth in the Settlement Agreement and include: (1) issuing Class Notice forms; and (2) issuing Settlement Payments. Defendants are responsible for (1) calculating and remitting to the IRS all required payroll taxes; and (2) calculating and issuing Form W-2s and Form 1099s and any other required state and federal tax forms.

The Parties' proposed notice program includes the following: (1) a Short-Form Notice (Ex. B to the Stipulation of Settlement); and (2) a Long-Form Notice (Exhibit C to the Stipulation of Settlement). The notice program provides that all Class Members will receive the

Short-Form Notice by first-class mail, with a number of avenues thereafter to obtain additional information. Plaintiffs' Counsel shall promptly conduct a second mailing for any Class Member whose Summary Notice is returned as undeliverable within forty-five (45) days of the date of the initial mailing, provided that a forwarding address is provided by the U.S. Postal Service or otherwise located by Plaintiffs' Counsel's best efforts.

While in an abbreviated form, the Short-Form Notice includes all essential information about the lawsuit required under Rule 23, including the persons affected, class definitions, the nature of the action, the possibility of, and method for, opting-out, along with a description of the various methods of obtaining additional information and obtaining a copy of the Long-Form Notice. Class Members seeking information beyond the essential details can request such information by contacting Plaintiffs' Counsel.

> d.    *Attorneys' Fees and Costs*

The Settlement Agreement provides that Class Counsel will seek approval for the payment of attorneys' fees and costs prior to the Final Approval Hearing. Under the Agreement, Class Counsel may seek attorneys' fees and costs not to exceed $450,000. Defendants shall not object to Class Counsel's fee and costs application within these limits.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND CERTIFY THE SETTLEMENT CLASS

> a.    *Settlement and Class Action Approval Process*

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could

hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Manual for Complex Lit., at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. See 2 Newberg & Conte, at § 11.22, et seq.

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of

9

preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. Id., § 11.25 at 11-36, 11-37.

The decision to approve a proposed settlement is committed to the Court's sound discretion. See *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion). During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron,* No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090, at *24-25 (N.D. Ill. Jan. 22, 1997) (citation omitted). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

  b.    *The Criteria for Preliminary Settlement Approval Are Satisfied.*

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463

F.3d 646, 652 (7ᵗʰ Cir. 2006). Utilizing a five-factor test, a court must consider: (1) the strength

of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity,

length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the

opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery

completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7ᵗʰ Cir. 1996). Further,

a court must not focus on an individual component of the compromise, but must instead view the

settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists

when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of*

*DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great*

*Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,* 212 F.R.D. 400, 410

(E.D. Wis. 2002). The parties' settlement meets all these criteria and clearly falls "within the

range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25.

      *1.*     *Strength of Plaintiffs' Case As Compared to the Amount of the Settlement*
                *and Allocation of the Settlement Payment*

One of the key considerations in evaluating a proposed settlement is the strength of the

plaintiffs' case as compared to the amount of the defendants' offer. See *Isby,* 75 F.3d at 1199.

However, "district courts have been admonished 'to refrain from resolving the merits of the

controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v.*

*Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7ᵗʰ Cir. 1985). Accordingly, in deciding whether

to approve the Settlement, this Court must focus on the general principles of fairness and

reasonableness, but not on the substantive law governing Plaintiffs' claims. See *id.* A settlement

is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs

of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker & Sons, Inc.,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The consideration to be paid by Defendants to the Class here is considerable and the plan of allocation is reasonable. See, Settlement Agreement, Section IV.8(c). The Net Settlement Fund provides for approximately $1,250,000 to be paid to 104 Class Members as overtime pay awards and interest awards. Class Members do not need to submit a claim form to participate in the Settlement. Class Members will receive their pro rata share of the Settlement based on their length of employment with Defendants during the class period, the number of full workweeks in which they were employed in the positions of GMM and/or AGMM, and based on their salary. AGMMs were scheduled to work forty-five hours per week, and GMM's were scheduled to work fifty hours per week. Declaration of Robin Potter, ¶16. Each class member's individual recovery will amount to more than double the wages each would have received for these hours had he or she been compensated for overtime based on the fluctuating workweek method. *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010); Declaration of Robin Potter, ¶16-17. This is an excellent result, and is amply fair and reasonable. *Id.*

### 2. *Complexity, Length, and Expense of Further Litigation*

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would continue to vigorously defend the case. Further litigation would require depositions and

additional motion practice relating to discovery, class certification and dispositive motions would be certain.   Plaintiffs and the Class Members may also have been required to confront appeals.  Additional litigation would increase the expenses of this litigation but would not have reduced the risks the litigation held for the Class.  See *Isby,* 75 F.3d at 1199; see also *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1019; *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers (In re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 409-10 (E.D. Wis.  2002).  Accordingly, the remaining burden, expenses, and risks for Plaintiffs and the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense.

### 3.     There Is No Opposition To The Settlement

The class representatives support the settlement, as do Plaintiffs' Counsel and Defendants.  At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement, which provides an excellent result to all class members. Ex. 2, Declaration of Robin Potter, ¶12.

### 4.     Opinion of Counsel

Plaintiffs' Counsel are experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement.  In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. See, Ex. 2, Declaration of Robin Potter, ¶11.  When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. See *In re Mexico Money Transfer Litigation,* 164 F. Supp. 2d 1002, 1020 (N.D.Ill. 2000); *Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment

as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001). Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery, trial and appeals. The Settlement was only reached after the conclusion of a mediation session overseen by the Magistrate Judge. Ex. 2, Declaration of Robin Potter, ¶ 6.

### 5. The Stage of the Proceedings and Discovery Completed

As explained above, this complex class action was resolved only after Plaintiffs' counsel interviewed opt in Plaintiffs and/or obtained and reviewed relevant documents in their possession; after Defendants produced the employment history and salary information for the entire class along with personnel files for the opt-in Plaintiffs; and after the Parties engaged in an extensive mediation session with a the Magistrate Judge. At the time the action was resolved, twenty two individuals, in addition to the Named Plaintiffs, opted into this action. These individuals worked in more than eleven stores, and provided significant information and documents to Plaintiffs' Counsel. Ex. 2, Declaration of Robin Potter, ¶4. The stage of litigation has advanced so that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. Ex. 2, Potter Decl., ¶ 5.

14

6.    *The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion*

The Settlement was the result of adversarial, arm's length negotiations that took place after investigation, informal discovery and substantial assistance from a third party mediator. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length."  *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020.  The pre-filing litigation activities as well as extensive post-filing litigation activities demonstrate the adversarial nature of this litigation and settlement.  The Parties were able to settle this action only after they engaged in initial discovery, as well as a vigorous and comprehensive vetting of the claims, and a mediation overseen by the Magistrate Judge.

Such arm's length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement.  *Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").  In the absence of any evidence of collusion, this factor favors final approval of the settlement.  See *Winston v. Speybroeck,* No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).  Therefore, the Court should find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

c.    *Provisional Certification of the Settlement Class is Appropriate*

On August 13, 2014, the Court preliminarily granted Plaintiffs' Motion for Class Certification for purposes of settlement.  Dkt. 29.  Certification remains appropriate in light of

the fact that the Parties have reached an agreement. Plaintiffs request the Court issue an order which provides that notice of the proposed Settlement can be issued to the Settlement Class, so that Class Members will be informed of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. See Manual for Complex Lit. at §§ 21.632, 21.633.

A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23(b); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class's claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). Fed. R. Civ. P. 23(a)(1) – (4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario,* 963 F.2d at 1017; *Arango v. GC Services, LP, et al.,* No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *3 (N.D. Ill. June 10, 1998). Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions

affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P.23(b)(1) – (3).[3]

The claims raised in this matter meet each of the statutory requirements for class treatment.

### 1. The Requirement of Numerosity is Met

Rule 23(a)(1) requires a class large enough that the joinder of all members would be "impracticable." Impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466, 471 (N.D. Ill. 1992). To determine whether joinder is impracticable, courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir. 1966). These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996). "To require a multiplicity of

---

[3]Illinois state and federal courts often have granted class certification of wage claims. See, e.g., *Schmidt v. Smith & Wollensky LLC,* 268 F.R.D. 323 (N.D. Ill. 2010)(IMWL claims for overtime pay); *Williams-Green v. J. Alexander's Rests., Inc.,* No. 09 C 5707, 2011 U.S. Dist. LEXIS 99373 (N.D. Ill. September 1, 2011)(IMWL claims for minimum wages); *Villanueva v. Davis Bancorp, Inc.,* No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089 (N.D. Ill. July 8, 2011)(IMWL claims for owed overtime pay); *Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330 (N.D. Ill. 2009) (IMWL claims for owed overtime pay); *Ladegaard v. Hard Rock Concrete Cutters,* No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000) (certifying class of current and former employees who were not paid for all work time, including time spent attending mandatory safety meetings); *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752; 892 N.E.2d 78; 322 Ill. Dec. 831 (1st Dist. 2008) (certifying IMWL and IWPCA class of plant employees who worked "off-the-clock," including at pre-shift meetings.).

suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson,* 415 F.2d at 1333.

In this case, that threshold requirement is easily met. One-hundred four (104) salaried GMM's and AGMM's were classified as exempt during the Class Period and were not paid one and one half times their regular rate for overtime hours worked.  Ex. 2, Declaration of Robin Potter, ¶ 8; Attachment A (Stipulation of Settlement); Exhibit A (Class List).  A class of this size easily satisfies the numerosity requirement found necessary in this District.  *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396, at *5 (N.D. Ill. Feb. 2, 2005) (Darrah, J.) (certifying  IMWL class for owed overtime pay where documents showed at 39 employees owed overtime  pay); *Swanson,* 415 F.2d at 1333 n.9 (noting that 40 class members would be sufficient).

### 2.    *These Issues Meet the Commonality Requirements*

For a class to be certified, questions of law or fact must exist common to the class. Fed.R.Civ. P. 23(a)(2).  To satisfy the commonality element, it is enough for plaintiffs to present just one common claim.  *Wal-Mart Stores, Inc., v. Dukes,* 131 S. Ct. 2541 at 2556 (2011). Commonality is satisfied when a common nucleus of operative facts and common questions of law exist.  *Rosario*, 963 F.2d at 1018.  In other words, the claims must depend upon a common contention, capable of class-wide resolution.  *Haschak v. Fox & Hound*, No. 10 C 8023, 2012 U.S. Dist. LEXIS 162476 *6 (N.D.Ill. Nov. 14, 2012).  A common set of operative facts is usually present when defendants are claimed to have engaged in standardized conduct toward the members of the proposed class.  *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). "Not all

factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Walker v. Bankers Life & Cas. Co.,* 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. 10/1/07), *quoting Riordan v. Smith Barney,* 113 F.R.D. 60, 63 (N.D. Ill. 1986).

Defendants acknowledge that the Company classified Plaintiffs and other salaried GMM's and AGMM's as exempt from the FLSA and IMWL and did not pay these employees overtime wages. See, Dkt. 23, ¶26. Here, common questions include whether the GMM's and AGMM's duties fit within the executive exemption of the IMWL, including whether (1) the employees were paid on a salary basis at a rate of not less than $ 455 per week; (2) their primary duty was management of the enterprise; (3) they customarily and regularly directed the work of two or more other employees; and (4) they had the authority to hire or fire other employees or their suggestions and recommendations be given particular weight. 29 C.F.R. 541.100; *Morgan v. Family Dollar,* 551 F.3d 1233 (11th Cir. 2008) (affirming judgment for plaintiffs in multi-state collective action on behalf of 1,424 store managers mis-classified as exempt executives), *cert den.,* 130 S.Ct. 59; *Perez v. Radioshack Corp.,* 552 F. Supp. 2d 731 (N.D. Ill. 2005). In addition, common questions exist relating to the appropriate method of computing the overtime wages due, if any, namely whether a fluctuating work week method applies. See, *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010); *Black v. Settlepou, P.C.,* 732 F.3d 492, 498 (5th Cir. 2013).

### 3. *The Issues Meet the Typicality Requirements*

The Rule 23(a)(3) requirement of typicality is met here as well. Claims of the class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele,* 149 F.3d at 595; *De La Fuente v.*

*Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Typicality and commonality are closely akin. *Rosario,* 963 F.2d at 1018. "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996).

The claims of the Named Plaintiffs and Class Members arise from the same actions of Defendants. Defendants did not pay salaried GMM's and AGMM's overtime wages based on the same classification decisions. Thus, the claim arises from the same actions of Defendant. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is meant to insure that the claims of the class representative have the "same essential characteristics as the claims of the class at large.").

### 4. Adequacy of Representation is Satisfied

To meet the adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Ladegard,* 2000 U.S. Dist. LEXIS 17832, *17, citing *Keele,* 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(4). Meeting the burden of this requirement is "not difficult." *Schmidt,* 268 F.R.D. at *327, *citing, Wahl v. Midland Credit Mgt.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). Under Rule 23(a)(4), the adequacy determination has two elements: the adequacy of plaintiffs' counsel, and the adequacy of protecting the different, separate, and distinct interest of the class members. *Ladegard,* 2000 U.S. Dist. LEXIS 17832, *17.

Plaintiffs and Plaintiffs' counsel will also fairly and adequately protect the interests of the class. Plaintiffs' counsel are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts, and will adequately protect the interests

of the class. Ex. 2, Potter Decl. ¶ 36; *see also, Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d

752; 892 N.E.2d 78; 322 Ill. Dec. 831 (1st Dist. 2008).

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic'

interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status.'" *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259

(S.D.N.Y. 1998)(quoting *Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y. 1995)). The

Class Representatives have no antagonistic interests that go to the subject matter of the lawsuit.

The Class Representatives worked in the same job position and were paid in the same manner as

all other Class Members.

　　　　5.　　*Rule 23(b)(3) is Satisfied*

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common

to the members of the class predominate over any questions affecting only individual members,

and . . . a class action is superior to other available methods for the fair and efficient adjudication

of the controversy." The class certification requested here meets those standards. An action

demonstrates a "predominance" of common questions where "the group for which certification is

sought seeks to remedy a common legal grievance." *Riordan v. Smith Barney,* 113 F.R.D. 60, 65

(N.D. Ill 1986). The test is not whether resolution of "common issues" would be dispositive of

the entire litigation. *Id.* Rather, as the court observed in *Johns v. DeLeonardis,* 145 F.R.D. 480,

484-85 (N.D. Ill. 1992):

> [Subsection (b)(3)] merely requires that the class claims have a dominant,
> central focus. Satisfaction of this criterion normally turns on the answer to
> one basic question: is there an essential common factual link between all class
> members and the defendant for which the law provides a remedy?

For the reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3), there exist predominating common questions of fact and law, and the class members' claims arose from the same actions of as those of the Named Plaintiffs.

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. See *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially dozens of individual lawsuits and piecemeal litigation. Likewise, a class action is an appropriate method for the fair and efficient adjudication of the controversy between the class and Dominick's. In this proceeding, the Parties will be allowed to resolve the claims of 104 persons in one coordinated proceeding, thus conferring significant benefits upon each class member if their claims are deemed to have merit. Dominick's will also benefit by being spared the expense and potential inconsistency of scores of individual lawsuits.

### d. The Parties' Proposed Notice Program

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. Rule 23 (e)(1) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. Fed.R.Civ.P. Rule 23(e); Manual for Complex Lit. at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 (1985).

Several recent cases have approved the use of the short-form notice to provide notice to absent class members: *Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill. 2009) (Dkt. # 152, at ¶6); *Schmidt v. Smith & Wollensky, LLC,* Case No. 09 C 2752 (N.D. Ill. 2009) (Dkt. #73, at ¶3); *Arrez v. Kelly,* No. 07 C 1289 (N.D. Ill.) (Dkt. #158, at 7-18); *Driver v. AppleIllinois LLC,* Case No. 06 C 6149 (N.D. Ill.) (Dkt. #239). For example, Judge Leinenweber approved the use of a short-form notice in the *Arrez* case, with a class of approximately 96,000 low-wage workers.

The principal reason that courts are approving notice procedures with short-form documents is comprehension and readability: Rule 23 requires that the court direct "best notice" that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P., 23(c)(2)(B). The short-form notice is more likely to be read by Class Members, and if read, more likely to be understood. The Parties' proposed notice procedure meets the requirements of Rule 23, and accordingly Plaintiffs' request that the Court approve the Notice forms and protocol.

### e. *Scheduling Final Approval Hearings Is Appropriate*

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Class Members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, the Court should grant the Motion for

Preliminary Approval of the Proposed Settlement, and issue the Order attached hereto as Exhibit

1.

Respectfully submitted,

/s/ Robin Potter
One of Plaintiffs' Attorneys

Robin Potter, Esq.                     Martin Dolan, Esq.
M. Nieves Bolaños, Esq.                Karen Munoz, Esq.
Patrick Cowlin, Esq.                   Dolan Law Offices, P.C.
Robin Potter & Associates, P.C.        10 South LaSalle Street, Suite 3702
111 East Wacker Drive, Suite 2600      Chicago, Illinois 60603
Chicago, Illinois 60601                (312) 676-7600
(312) 861-1800                         mdolan@dolanlegal.com
robin@potterlaw.org                    kmunoz@dolanlegal.com
nieves@potterlaw.org
patrick@potterlaw.org